# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**SHERRY HIGGINS**                                                                      **PLAINTIFF**

**V.**                              **CASE NO. 4:20-CV-01043 LPR-JTK**

**COMMISSIONER OF**
**SOCIAL SECURITY ADMINSTRATION**                                    **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.    Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.   Introduction:**

Plaintiff, Sherry Higgins, applied for disability benefits on July 5, 2018, alleging disability beginning on May 26, 2017.[1] (Tr. at 11). The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Higgins's claim on November 19, 2019. (Tr. at 21). The Appeals Council denied her request for review on June 24, 2020. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Higgins has requested judicial review. For the reasons stated below, the Court

---

[1] Higgins previously applied for disability benefits and was denied benefits in a decision dated October 19, 2017. (Tr. at 68). At the hearing, Higgins amended her alleged onset date for the instant application to October 20, 2017. (Tr. at 11).

should affirm the decision of the Commissioner.

III. **The Commissioner's Decision:**

The ALJ found that Higgins, who was born on November 26, 2021, had not engaged in substantial gainful activity since the amended alleged onset date of October 20, 2017.[2] (Tr. at 13, 399). The ALJ found, at Step Two, that Higgins had the following severe impairments: osteoarthritis of the bilateral knees, degenerative disc disease of the lumbar spine with lumbago, scoliosis, obesity, and chronic obstructive pulmonary disease ("COPD"). (Tr. at 14).

At Step Three, the ALJ determined that Higgins's impairments did not meet or equal a listed impairment. (Tr. at 15). Before proceeding to Step Four, the ALJ determined that Higgins had the residual functional capacity ("RFC") to perform light work, with additional limitations. (Tr. at 15-16). She can never climb ladders, ropes or scaffolds, and she can only occasionally climb ramps or stairs. *Id*. She can only occasionally stoop, crouch, kneel, and crawl. *Id*. She must avoid concentrated exposure to extreme heat and cold, excessive wetness or humidity, and irritants such as fumes, odor, dust, gases, and poorly ventilated areas. *Id*. She must also avoid concentrated exposure to excessive vibration. *Id*.

Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that Higgins was capable of performing past relevant work as a recreation leader. (Tr. at 19). At Step Five, the ALJ made an alternate finding: based on Higgins's age, education, work experience, and RFC, there were jobs in the national economy that she could perform (Tr. at 19-21). Therefore, the ALJ

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work23; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

found that Higgins was not disabled. *Id*.

## IV. **Discussion**:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole

which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Higgins's Arguments on Appeal

Higgins argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that: (1) the ALJ failed to properly consider all of her impairments in combination; (2) the ALJ did not fully develop the record; (3) the ALJ did not properly evaluate her subjective complaints; and (4) the ALJ erred in the RFC finding and the Step Four finding that Higgins could return to her past relevant work.

At the hearing, Higgins testified that she was mainly limited by back and leg problems. (Tr. at 39-39). A lumbar spine MRI done in 2017 showed scoliosis, with moderate-to-severe foraminal narrowing, but without nerve root impingement or canal stenosis. (Tr. at 386-387). Higgins treated conservatively with pain medication and lumbar injections, which were moderately effective. (Tr. at 39-41). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). No doctor prescribed physical therapy, and she was tapered off of pain medication in 2019. (Tr. at 39-41, 506-510). Clinical motor, sensory, and strength exams were grossly normal, and Higgins had negative straight-leg raise testing. (Tr. at 420-421, 473-477, 499, 506-510, 544). Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Higgins also had osteoarthritis in her knees, but she likewise treated that conservatively with braces and injections. (Tr. at 42). Her doctors recommended that Higgins exercise and lose weight. (Tr. at 343). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Moreover, Higgins said she could perform daily activities inconsistent with her complaints of disabling pain. She cared for three dogs, prepared her own meals, did light housework, drove, and shopped in stores. (Tr. at 46-50). She also went out to eat and walked flea markets. *Id.* Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

As for other alleged impairments, Higgins stated that her lupus was in remission. (Tr. at 41-42). She did not seek professional counseling services for depression, and the Disability Determination Services mental professional found no severe mental impairments. (Tr. at 43, 74). While Higgins complained of problems from COPD, she continued to smoke a half-pack of cigarettes a day. (Tr. at 41). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of her alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). She also said that she was not working because she did not have the technical background for the jobs for which she applied, not because of medical disability. (Tr. at 38-39).

The DDS medical experts found that Higgins was capable of performing work at the light exertional level, which opinions the ALJ adopted. (Tr. at 63, 77). J. Michael Calhoun, M.D., said that Higgins was not a candidate for surgery and should continue with pain management. (Tr. at 397-400).

Higgins alleges that the ALJ did not properly consider all of her impairments in combination. On the contrary, he discussed all of her alleged impairments, even those that were not severe, and he cited to the relevant medical evidence. He referenced Higgins's BMI, which indicated morbid obesity, and he noted her doctors' recommendations to lose weight. (Tr. at 17).

He discussed opinion and testimonial evidence. (Tr. at 18). The ALJ analysis of Higgin's impairments was thorough. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994)(ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work).

Higgins argument that the ALJ failed to fully develop the record fails as well. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011) Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

In fact, Higgins's counsel said at the hearing that the record was complete, and he did not ask for a consultative examination. (Tr. at 30-31, 54). Because there was no evidentiary conflict to resolve, the ALJ was not required to obtain further evidence. The ALJ based his decision on a fully developed record.

Next, Higgins asserts that the ALJ failed to fully consider her subjective complaints. When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; and (6) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir.

2019); SSR 16-3p; 20 C.F.R. § 404.1529. An ALJ need not explicitly discuss each factor, and he may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id*.

In this case, the ALJ asked Higgins about her daily activities, her work history, effectiveness of medications, and her tendency to continue to smoke in spite of having COPD and using two inhalers. (Tr. at 35-50). He discussed the objective medical evidence and the medical opinions. No doctor placed any functional restrictions on Higgins. The ALJ properly weighed Higgins's subjective complaints against the balance of the evidence, and found that her subjective assertions were outsized.

Finally, the RFC for light work with environmental restrictions was appropriate.[3] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). As discussed above, conservative treatment proved effective and Higgins could perform a variety of daily activities indicating that she could perform light work. The properly constructed RFC allowed for Higgins to return to her past work as a recreation leader, which is classified as light, skilled work. (Tr. at 19).

---

[3] Light work is defined as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 C.F.R. § 404.1567.

## V. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The record was fully developed, and the ALJ fairly analyzed all of Higgins' impairments and her subjective complaints. The RFC properly incorporated all of Higgins's limitations. The finding that Higgins was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 15th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE